UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| 117 Church Road LLC, a Wisconsin limited liability company, | ) ) ) | |
| Plaintiff/Counter Defendant | ) ) | NO.   24 CV 3226 |
| v. | ) ) | |
| SHAYNA MELVANI and VINESH MELVANI | ) ) ) | Judge:  Hon. Georgia N. Alexakis |
| Defendants/Counter Plaintiffs. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON ITS' CLAIM AND DEFENDANTS' COUNTERCLAIM**

## INTRODUCTION

This is an action for breach of contract. The parties entered into a purchase and sale agreement ("PSA") using a standard Multi-Board Residential Real Estate Contract 7.0 form. **ECF 49-1.** The dispute in this case involves Paragraph 12 of the PSA Professional Inspections and Inspection Notices. *Id.* **at pp. 4-5.** The sole issue in this case is whether the Buyers breached the PSA by refusing to close on the sale unless Seller would agree to their demand for a $250,000 price reduction. **ECF 49-10***.*

## ARGUMENT

**I.     Plaintiff Is Entitled to Summary Judgment on Its' Breach of Contract Claim.**

To succeed on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, courts "review the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *NES Rentals Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). To establish a breach of contract under Illinois law, a plaintiff must prove: (1) that a valid and enforceable contract exists; (2) that the plaintiff has substantially performed; (3) that the defendant has committed a breach; and (4) resulting damages. *VC Mgmt., LLC v. Reliastar Life Ins. Co.,* 195 F. Supp. 3d 974, 985 (N.D. Ill. 2016) (citing *Reger Dev., L.L.C. v. Nat'l City Bank,* 592 F.3d 759, 764 (7th Cir.2010)).

In Illinois, "[a] contract, to be valid, must contain offer, acceptance, and consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined." *DiLorenzo v. Valve & Primer Corp.***,** 807 NE 2d 673, 678, (2004), 347 Ill. App.3d 194, 283 Ill.Dec. 68 (citations omitted).  "A contract is sufficiently definite

and certain to be enforceable if the court is able from its terms and provisions to ascertain what the parties intended, under proper rules of construction and applicable principles of equity." *Id.*

On June 16, 2023, the Defendants ("Buyers") made an offer to purchase the Plaintiffs' ("Seller") Property at 117 Church Road, Winnetka, IL, using a standard Multi-Board Residential Real Estate Contract 7.0 ("PSA"). **ECF 20, P. 2, at ¶ 7, at pp. 15-27.** The blank spaces were filled in by the buyer's real estate agent and mother, Sunita Melvani. *Id.* **at p. 27.** The relevant terms of the PSA were a sale price of $2,275,000, initial earnest money of $20,000, additional earnest money of $70,000, and closing on July 14, 2023. *Id.* **at pp. 15-16.** In addition, the PSA contained three contingencies, namely: 1. A mortgage contingency ¶ 7a; 2. Attorney Review ¶ 10; and 3. Professional Inspections ¶ 12. *Id.* **at pp. 16, 18-19.** The seller, after receiving assurances from the buyers' lender, Chase Bank, that the buyers were fully qualified accepted the offer as presented by the buyers on June 16, 2023. **ECF 49, p. 2, at ¶ 14.**

The test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the offeror. *VC Mgmt., LLC v. Reliastar Life Ins. Co.,* 195 F. Supp. 3d 974, 985 (N.D. Ill. 2016) (applying Illinois law)). In this case, the Seller signed the offer without making any changes. Thus, there could be no doubt that by signing the offer, the Seller reasonably believed that the contract would bind the Buyers and Seller under the exact terms proposed by the Buyers. In addition, the PSA is sufficiently definite and certain, because it is on a standard real estate board contract, all of the terms and conditions are within the 4 corners of the contract, and it was signed by the Seller as it was presented by the Buyers. The acceptance is absolute, unconditional, and identical with the terms of the offer satisfying the "mirror image" rule in Illinois. *Nomanbhoy Family Ltd. P'ship v. McDonald's Corp.*, 579 F. Supp. 2d 1071, 1092 (N.D. Ill. 2008) (applying Illinois law).) Thus, the Defendants made a written offer to purchase Plaintiffs' property for

3

$2,275,000 on terms acceptable to the Plaintiff, which the Plaintiff signed without change. **ECF 49, p. 1 at ¶ 5.** Accordingly, a valid enforceable contract exists.

Under ¶ 7a of the PSA, closing of the sale was contingent upon the Defendants obtaining a mortgage. **ECF 49-1, p. 2.** Prior to submitting their offer, the Buyers were preapproved for a mortgage of 75% of the purchase price [or $1,706,250] with an interest rate not to exceed 7% per annum and subject only to "close conditions, matters of title, survey, and matters within Buyer's control." **ECF 49-7, p. 2.** The property appraised for $2,280,000 or $5,000 over the purchase price so it was sufficient to support the loan amount set forth in the mortgage contingency. **ECF 49-8, p. 4.** Assuming all of the other information provided to the bank by the Buyers was accurate, the Buyers mortgage should have been approved. In addition, Seller was never notified that the Buyers were not approved so the mortgage contingency was either satisfied or waived. **ECF 49, p. 5 at ¶ 23.**

Under ¶10 of the PSA, the attorneys for the respective Parties, had five business days after contract acceptance to approve, disapprove or propose modifications to the contract. **ECF 49-1, p. 4.** Buyers' attorney proposed modifications to the PSA and Sellers' attorney responded. **ECF 49-3 and 49-4,** and the Buyers' attorney agreed to those responses and Attorney Review was concluded on June 30, 2023 ("The parties are in agreement as to matters of Attorney Review.") **ECF 49-10.**

Paragraph 12 of the PSA states that the Buyer may conduct any inspections it desires in the exercise of reasonable due diligence and that any request for repairs shall cover only the major components of the Real Estate which. either constitute a current threat to health or safety or does not perform the function for which it is intended. **ECF 20 pp. 18-19.** Within 5 business days of the contract, the Buyers were required to serve Notice upon Seller or Seller's attorney of any major

component defects disclosed by any inspection for which Buyer requests resolution by Seller. *Id.* Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a waiver of Buyer's rights to terminate the Contract under Paragraph 12 and the Contract shall remain in full force and effect. *Id.*

On the fifth business day after acceptance, the Buyer identified 10 items they wanted to investigate further. **ECF 49-4, P. 2.** Several of the items identified by the Defendants are not "major component defects" and, therefore, not covered under the permitted repair inspection items. **ECF 49-1, pp. 4-5.** Specifically, damaged hardwood flooring (scratches); two trees removed (for additional parking); damaged refrigerator door and wood panel (panel needed paint touch ups – refrigerator operated as intended), gutters and window cleaning (cosmetic/maintenance). *Id.* Other items required a quick fix and were not defective: master bathroom radiant floor had a loose thermostat wire; one gas range burner needed cleaning. **ECF 49, pp. 3-5, at ¶ 19.** Another item was covered under warranty (windows with stress cracks). *Id.* Accordingly, the only defective items identified which seller would have needed to address were unsafe electric which consisted of unpowered low voltage wires that needed to be covered (cable wires not terminated in an electrical box covered with a piece of cardboard and a speaker wire in master shower for future speaker installation if desired), an unsafe railing balusters at balcony which needed a baluster to be installed to meet the 4" maximum opening permitted. *Id.* The total cost to repair, including sanding floors and relocating an a/c condenser which were not necessary, was still less than $5,000. *Id.* Even though they were aware that most of the items were not defective, easily repaired, or covered under warranty, the Buyers did not request any repairs or credit be given by Seller. **ECF 49-4, p. 2.** However, the Buyers did request an extension until June 30, 2023, to obtain estimates. *Id.*

5

On June 30, 2023, the Defendants requested a $250,000 price reduction and the posting of an unknown escrow amount. **ECF 49-10.** Fifty Thousand Dollars was to cover Icon Builders bid and $200,000 was for what the Buyers deemed "un-occupiable attic space." **ECF 49-9 and 49-10.** The Seller rejected the Buyers' request. **ECF 49-11, p.5.** The Buyers notified the Seller that they would not reconsider or close without the $250,000 price reduction and escrow posted. *Id.* at **P. 4.** Seller made several attempts to lure the Buyers back to no avail. **ECF 49-11.** Ultimately, the property was sold to another buyer for $2,100,000 or $175,000 less than what was agreed to between the parties. **ECF 49-17.**

Seller worked diligently to save the deal over the next few days only to be met with a threat from Defendants' attorney to cloud title by recording the contract and correspondence. **ECF 49-11, p. 1.** The Defendants were informed that they were in breach of contract and would be held accountable for the damages Seller suffered as a result of the breach. *Id.*

The Buyers initial position was that the Seller misrepresented the square footage, because the attic space was un-usable. **ECF 49-10, p. 1.** Later their position changed claiming that square footage in the listing sheet was incorrect and material to their decision to pay $2,275,000 for the property. **Counterclaim Count II, ECF 20, pp. 11-12.** Both of these positions are easily debunked. First the attic space was habitable (See for ex. Certificate of occupancy, floor plans, building plans and appraisal. **ECF 49-2, pp. 4, 6, ECF 49-8, p. 32, and ECF 49-18;** second, the listing sheet was not incorporated into the PSA **ECF 20, pp. 15-27**; third, square footage was not incorporated into the PSA *Id.*; fourth the square footage was not incorporated into the attorney modification **ECF 49-3 and ECF 49-4**; fifth, the listing sheet contained a disclaimer advising anyone using it to independently verify the square footage. **ECF 49-15, p. 2**; and sixth, the Buyer's own appraisal independently verified that the attic space was useable and correctly included in the

6

above grade square footage **ECF 49-8, p. 32.** Accordingly, the Buyers argument that the square footage was misrepresented is simply not true.

It is also important to note that the square footage of the home is not a covered item under ¶ 12, of the PSA because it not a major component. **ECF 20, pp.18-19.** Major component is defined under ¶ 12 of the PSA as "limited to central heating and cooling system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors, appliances, and foundation." *Id.* Clearly, the square footage was not a material part of the PSA since it was not part of the PSA and was not a covered item under ¶ 12. *Id.*. Icon planted the seed with the Buyers by telling them that the ceiling was too low and not to code. **ECF 49-9, p. 2, ECF 49-11, p. 3.** The Buyers used this misinformation from Icon as a bargaining chip to try and knock $250,000 off of the price. When the Seller called their bluff, they walked. In sum, the Buyer had no right to ask for a $250,000 price reduction and their decision to unilaterally cancel the PSA excused the Seller from any further performance. "When one party repudiates a contract, the non-repudiating party is excused from performing. *Tower Invs., LLC v. 111 E. Chestnut Consultants, Inc.,* 864 N.E.2d 927, 940 (Ill. App. Ct. 2007).

Plaintiff/Seller had always stood ready, willing and able to perform its side of the PSA. **ECF 49, p. 6, at ¶28.** On the other hand, the Defendants/Buyers have refused to live up to their side of the PSA by requesting a price reduction they were not entitled to and refusing to honor the PSA unless the Seller conceded to their outrageous demand for a $250,000 price reduction. Accordingly, Plaintiff/Seller entered into a valid binding contract with the Defendant/Buyer; the Defendant breached the PSA by refusing to close unless Plaintiff agreed to a $250,000 price reduction they were not entitled to; and Defendants' breach resulted in damages to Plaintiff of

$175,000 plus costs. Plaintiff is also entitled to attorney fees under paragraph 28 of the PSA. **ECF 20, p. 23, at ¶ 28.**

II. **Plaintiff is entitled to Summary Judgment on Defendants Counterclaims**

Defendants have filed two counterclaims. The first counterclaim alleges that the Plaintiff breached the PSA by refusing to return their earnest money after they cancelled the PSA. This claim is moot, because the earnest money has been deposited with the Court.

The second counterclaim alleges that the Plaintiff misrepresented the square footage of the home in the MLS listing sheet. This claim fails for the reasons set forth above. The Defendants had no right to rely on the listing and had a duty to independently verify the information which was done by their appraiser. The square footage of the house was not material to their purchase, because the buyers did not make any mention of square footage until they attempted to force the Plaintiff into accepting a $250,000 price reduction with no basis under the PSA. Accordingly, Plaintiff is entitled to summary judgment on the two counterclaims as well.

## CONCLUSION

For the reasons set forth above, Plaintiff/Counter Defendant is entitled to summary judgment on its' complaint and on the Defendants/Counter Plaintiffs' counterclaims, damages in the amount of $175,000, plus costs and a reasonable attorney fee as determined by the Court.

Dated: February 10, 2025

/s/ Martin J. Murphy
LAW OFFICE OF MARTIN J. MURPHY
Martin J. Murphy (ARDC No. 6195776)
630 S. Lakeshore Drive, Fontana, WI 53125
Phone: 312-933-3200   Fax 773-338-9913
email: mjm@law-murphy.com

CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on February 10, 2025, I filed the attached document using the Court's ECF system. All parties have filed appearances and will be served by the Court's electronic filing system.

By: s/ Martin J. Murphy